UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-20324-CIV-SCOLA/GOODMAN

CELERA TELECOM LTD., f/k/a
LOGIK COMMUNICATIONS
PTE., LTD.,

    Plaintiff,

v.

LDI NETWORKS, INC.,

    Defendant.

_____/

**OMNIBUS REPORT AND RECOMMENDATIONS ON**
<u>**PLAINTIFF'S MOTIONS FOR COSTS AND ATTORNEY'S FEES**</u>

This Cause is before the Undersigned following the filing of Plaintiff's Motion to Tax Costs [ECF No. 18] and Motion for Attorney's Fees [ECF No. 19], which were referred to the Undersigned by United States District Court Judge Robert N. Scola ("the District Court"). [ECF No. 20]. The Undersigned has reviewed the motions and other relevant portions of the record.[1] For the reasons given below, the Undersigned **RESPECTFULLY RECOMMENDS** that the District Court **GRANT IN PART** Plaintiff's Motion to Tax Costs and **DENY** Plaintiff's Motion for Attorney's Fees.

**I.     Background**

---

[1]     Defendant has not filed a response to either of Plaintiff's motions, and the time to do so has now expired.

On January 26, 2021, Plaintiff Celera Telecom Ltd. ("Celera") filed a Complaint against Defendant LDI Networks, Inc. ("LDI"), seeking recognition of a foreign judgment pursuant to Florida Statute § 55.601, *et seq*. [ECF No. 1]. The foreign judgment is the product of Celera's lawsuit in the United Kingdom against LDI "to collect sums owed by LDI to [Celera] pursuant to a Reciprocal Telecommunications Service Agreement dated May 3, 2017 ("RTS Agreement"). *Id.*

LDI was properly served with Celera's Complaint [ECF Nos. 3; 8] and did not respond. Celera filed a Motion for Clerk's Entry of Default [ECF No. 10], which was entered the same day. [ECF No. 11]. Celera then filed a motion for default judgment. [ECF No. 12]. The matter was referred to the Undersigned [ECF No. 13] and the Undersigned issued a Report and Recommendations recommending that the District Court grant Plaintiff's motion in large part [ECF No. 15]. No objections were filed, and the District Court adopted the Report and Recommendations in whole. [ECF No. 17].

At issue now are Plaintiff's Motion to Tax Costs and Motion for Attorney's Fees. [ECF Nos. 18; 19].

## II. Legal Standards

### A. Bill of Costs

Absent a federal statute, civil procedure rule, or order to the contrary, a prevailing party is entitled to an award of its costs. Fed. R. Civ. P. 54(d)(1). The prevailing party must file a bill of costs, adhering to the guidelines outlined in Local

2

Rule 7.3(c), which specifically references 28 U.S.C. § 1920. Under § 1920, the following costs are taxable against the losing party:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Although a prevailing party is entitled to taxable costs, the Court can still exercise discretion in awarding the costs that § 1920 enumerates. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). When challenging whether costs are taxable, "the losing party bears the burden of demonstrating that a cost is not taxable, unless the knowledge regarding the proposed cost is within the exclusive knowledge of the prevailing party." *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1333 (S.D. Fla. 2009) (internal citations omitted). Nevertheless, the Court is still limited to taxing only those costs specifically authorized by statute. *E.E.O.C v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co.*, 482 U.S. at 445).

### B. Attorney's Fees

Typically, under the "American Rule", "each party bears its own attorney's fees." *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1331 (11th Cir. 2002) (acknowledging "the general applicability of the American Rule regarding fee shifting, i.e., that each party bears its own attorneys' fees"); *Panama Shipping Lines, Inc. v. Ciramar Int'l Trading, Ltd.*, No. 08-21213-CIV, 2009 WL 812714, at *3 (S.D. Fla. Mar. 26, 2009) ("The American Rule stands for the proposition that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."). Thus, "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975).

The party seeking attorney's fees bears the burden of establishing entitlement via statute or enforceable contract. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) ("[F]ee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). And "[b]ecause the right to attorney's fees must be found in a contract or statute, the specific text of the contractual or statutory provision granting the right is critical to determining an award of fees." *Cabrera v. Haims Motors, Inc.*, No. 17-CV-60500, 2018 WL 2455438, at *2 (S.D. Fla. June 1, 2018), report and recommendation adopted, No. 17-CIV-60500, 2018 WL 4409844 (S.D. Fla. June 19, 2018) (citing *Florida Medical Ctr. v. McCoy*, 657 So. 2d 1248, 1250 (Fla. 4th DCA 1995)).

**III.   Analysis**

   **A.  Costs**

"A 'prevailing party' is the party in whose favor judgment is rendered by the Court." *Pronman v. Styles*, No. 12-80674, 2015 WL 6913391, at *1 (S.D. Fla. Nov. 10, 2015) (citing *Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop.*, Inc., 298 F.3d 1238, 1248 (11th Cir. 2002)). As the prevailing party in this case, Plaintiff is requesting that the Court award it costs under 28 U.S.C. § 1920. [ECF No. 18]; *see, e.g.*, *Adderley v. Three Angels Broadcasting Network, Inc.*, No. 18-23362-CIV, 2020 WL 1808209 (S.D. Fla. Apr. 9, 2020); *Powell v. Carey Int'l, Inc.*, 548 F. Supp. 2d 1351, 1355 (S.D. Fla. 2008) (citing *Fireman's Fund Ins. Co. v. Tropical Shipping and Constr. Co., Ltd.*, 254 F.3d 987, 1012 (11th Cir. 2001)) ("The Eleventh Circuit consistently supports shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced.").

Although Plaintiff's motion is unopposed, it is still appropriate to independently assess Plaintiff's requested costs to determine whether they are recoverable under § 1920. *See Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1333 (S.D. Fla. 2009) ("Although [the] [p]laintiff has failed to object to the costs set forth in [the] [d]efendant's Motion, the Court nonetheless reviews each category of the items sought in the [the] [d]efendant's Motion, and whether [the] [d]efendant can properly receive monies for these categories of costs under the statute."); *Greer v. Ivey*, No. 6:15-CV-677-Orl-41GJK, 2020 WL 2841377, at *1 (M.D. Fla. Apr. 28, 2020) ("Although the Court could treat the

[movant's] motion as unopposed and award all of the costs sought I believe the better approach is to analyze each part of the application and rule accordingly.").

Plaintiff seeks to tax $402.00 for the costs of filing the case and $70.40 for the costs of serving the summons on Defendant, a combined total of $472.40. For the reasons discussed below, Plaintiff is entitled to tax most of its costs.

Court filing fees are recoverable costs under 28 U.S.C. § 1920(1). *See Diaz v. AIG Mktg., Inc.*, No. 06-60011-CIV, 2010 WL 2541872, at *2 (S.D. Fla. June 1, 2010) (taxing $350.00 against the non-prevailing party for court filing fees). Therefore, the Undersigned **respectfully recommends** that the District Court award Plaintiff **$402.00** for court filing fees.

Courts in this district have confirmed that service of process fees paid to private process servers are taxable under 28 U.S.C. § 1920(1), provided that the process server's rates do not exceed the fees of the U.S. Marshals to effectuate service. *Transatlantic Lines, LLC v. Portus, Stevedoring LLC*, No. 14-60528-CIV, 2016 WL 1154796, at *3 (S.D. Fla. Jan. 13, 2016) (citing *W&O, Inc.*, 213 F.3d at 624). The United States Marshals' rate to effectuate service is $65.00 per hour for process served, plus travel costs and out-of-pocket expenses. 28 C.F.R. § 0.114(a)(3).

Plaintiff's costs for serving the summons on Defendant exceeds the Marshals' rate. Accordingly, the Undersigned **respectfully recommends** that the District Court

award Plaintiff **$65.00** for serving the summons on Defendant ($5.40 less than the requested amount).

### B. Attorney's Fees

Plaintiff claims it qualifies for an exception to the general principle that a party bears its own costs of litigation. Specifically, Plaintiff alleges that it is entitled to attorney's fees because "English law applies under the RTS Agreement" that served as the basis for its merits claim. [ECF No. 19]. Plaintiff provides limited support for this position and cites only a single case where a court has awarded a prevailing party attorney's fees under English law.

Plaintiff's argument begins with the well-established principle that "[i]n a diversity action, the court looks to the substantive law which creates the cause of action, in this case Florida law, to determine if [the prevailing party is entitled to] attorney's fees." *Alhassid v. Nation Star Mortg.*, LLC, 767 F. App'x 865, 867 (11th Cir. 2019) (quoting *Tanker Mgmt., Inc. v. Brunson*, 918 F.2d 1524, 1527 (11th Cir. 1990) (alterations in original). Plaintiff then turns to its only cited case addressing the issue of entitlement, *Eur. Bank Ltd. v. Online Credit Clearing Corp.*, 969 So. 2d 450, 451 (Fla. 4th DCA 2007). According to Plaintiff, this case holds that "Florida courts apply the English rule regarding attorney's fees and costs -- attorney's fees and costs are awarded to the prevailing party as a matter of law -- where the cause of action concerns an agreement governed by English law."

7

As stated previously, Plaintiff bears the burden to establish that the RTS Agreement allows for recovery of attorney's fees in contravention of the American Rule. Phrased differently, Plaintiff must establish more than a general principle that a court can apply English law based on a choice-of-law[2] contractual provision. Instead, it must show that this Court *must* apply English law based on *this* contract between it and Defendant. Although Plaintiff does not provide the relevant contractual provision in the body of its motion, it includes the RTS Agreement as an attachment. [ECF No. 19-1]. The relevant provision states:

22. CHOICE OF LAW

"This Agreement and its attachments, [sic] is governed by and shall be construed in accordance with English Law. Both Parties submit to the exclusive jurisdiction of the Courts of England and Wales."

*Id.*

---

[2] "[A] federal district court sitting in diversity must apply the choice of law rules of the forum state." *Clanton v. Inter.Net Glob., L.L.C.*, 435 F.3d 1319, 1323 (11th Cir. 2006). Under Florida's choice-of-law rules, it is well-settled that "Florida courts are obligated to enforce choice-of-law provisions unless a showing is made that the law of the chosen forum contravenes strong public policy or that the clause is otherwise unreasonable or unjust." *Great Am. Fid. Ins. Co. v. JWR Constr. Servs.*, Inc., 882 F. Supp. 2d 1340, 1350 (S.D. Fla. 2012) (internal quotation marks and citation omitted)); *see Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 314 (Fla. 2000) (same).

Section 671.105(1), Florida Statutes, "expressly anticipates that parties may enter into choice-of-law provisions: 'When a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.'"*4 Jet Pay, LLC v. RJD Stores, LLC*, No. 11-60722-Civ, 2011 WL 2708650, at *5 (S.D. Fla. July 12, 2011) (alteration adopted; quoting Fla. Stat. § 671.105(1); other citation omitted).

Although Plaintiff cites *Eur. Bank Ltd.* for a sweeping proposition that Florida courts apply English law "where the action concerns an agreement governed by English law[,]" this broad language is not found within the Fourth District Court of Appeal's ruling. Instead, the Fourth District Court of Appeal found that English law controlled on the issue of attorney's fees because "[t]he agreement upon which European Bank filed suit provided, *inter alia*, that **any dispute** would be governed by English law. *Eur. Bank Ltd.*, 969 So. 2d at 451 n.2 (emphasis added).

The RTS Agreement contains no language similar to the encompassing "any dispute" provision present in the *Eur. Bank Ltd.* contract. Plaintiff's contract with Defendant is much more limited in scope.

In *Rolls-Royce Com. Marine, Inc. v. New Hampshire Ins. Co./AIG Eur. (UK)* -- a diversity case like this one -- United States Chief District Court Judge Cecilia M. Altonaga addressed a choice-of-law provision similar to that in the RTS Agreement:

> [T]he scope of the choice-of-law provision is a threshold question governed by the law of the forum. *See* [*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005)]. Consequently, the question is whether the dispute over attorney's fees is within the scope of the choice-of-law provision under Florida law.
>
> . . .
>
> In essence, the English rule creates a quasi-right of action for "wrongful" legal costs. The prevailing plaintiff enjoys a right to recover attorneys' fees for having needed to vindicate her rights through litigation-because the defendant did not immediately settle. The prevailing defendant enjoys a right to recover attorneys' fees for having been dragged into court to defend herself-against a claim that the plaintiff should not have brought.

> *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 218–19 (S.D.N.Y. 2006) (footnote call numbers omitted). The dispute over attorney's fees, therefore, is akin to a separate, collateral claim and is not a dispute over the agreement itself. The Ledger Policy's provision that it be "**governed and construed by English law**" does not extend to this claim for attorney's fees in the way it may have if there were a dispute over the scope or effect of a separate provision in the contract apportioning attorney's fees (there is no separate provision apportioning attorney's fees in the Ledger Policy). Moreover, even if this claim for attorney's fees could be characterized as a claim or dispute arising out of the Ledger Policy, that would not be enough to bring it within the narrow scope of the choice-of-law provision. The choice-of-law provision that the parties negotiated does not require that English law be applied to resolve *every* disagreement between them. Accordingly, the claim for attorney's fees falls outside the scope of the choice-of-law provision, English law does not apply to that claim, and the Insurers are <u>not entitled to recover attorney's fees.</u>

No. 09-61329-CIV, 2011 WL 13173609, at *3 n.3 (S.D. Fla. May 5, 2011) (emphasis added).

Plaintiff's motion makes no effort to argue or explain why this Court should apply the *Eur. Bank Ltd.* Court's reasoning in evaluating the RTS Agreement's much more narrow language.

Choice of law provisions are to be construed narrowly. *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009) ("For example, a provision providing that "[t]his release shall be governed and construed in accordance with the laws of the State of [X]," will be construed narrowly as it only purports to govern the agreement itself and does not refer "to any and all claims or disputes arising out of the" agreement.")

Two Eleventh Circuit decisions illustrate this principle in action:

In *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003), the Eleventh Circuit examined a settlement agreement containing a choice of law clause that stated: "This Release shall be governed and construed in accordance with the laws of the State of Delaware without giving effect to the choice of law provisions thereof." This language was determined to be narrow in scope "in that only the release itself is to be construed in accordance with the laws of the State of Delaware." *Id.* Because of this,

> [t]he clause [did] not refer to related tort claims or to any and all claims or disputes arising out of settlement or arising out of the relationship of the parties. This type of narrow choice-of-law clause calls for the application of the selected law to determine *only* the scope and effect of the release.

*Id.* (emphasis added).

The Eleventh Circuit reached a contrary result in *Alabama Aircraft Indus., Inc. v. Boeing Co.*, No. 20-11141, 2022 WL 433457, at *8 (11th Cir. Feb. 14, 2022) when assessing this choice of law provision: "The interpretation of this Agreement and the rights and liabilities of the parties to this Agreement shall be governed by the law of the state of Missouri, excluding its conflicts of laws principles." As noted by the appellate court, this provision contains two parts: "It indicates that Missouri law governs both 'the interpretation of this Agreement' and 'the rights and liabilities of the parties to th[e] Agreement.'" *Id.* at 9. The second part -- concerning the rights and liabilities of the parties -- made the parties to the agreement the focal point of that clause rather than the agreement itself. *Id.* Thus, "the choice-of-law provision, fairly read, [was] concerned

11

with the rights and liabilities of the parties that have some nexus to 'th[e] Agreement'" and Missouri law applied to issues beyond the interpretation of the agreement. *Id.*

The choice-of-law provision upon which Plaintiff relies in support of its attorney's fee request is near identical to the provisions discussed in *Green Leaf Nursery* and *Rolls-Royce Com. Marine, Inc.* Plaintiff's sole case in support of its entitlement argument addresses a provision much more expansive -- requiring *any dispute* to be governed by English law -- than the choice-of-law provision in the RTS Agreement.

Accordingly, the Undersigned finds that English law does not control on the issue of attorney fee entitlement. However, even if Plaintiff were to establish that English law controls (which it has not done), it would still be faced with other issues warranting denial of its request. Specifically, although Plaintiff claims that English law controls on the issue of attorney's fees, it cites no English law, nor does it provide information on how attorney's fees are handled under English law. Instead, Plaintiff turns to the traditional American standards in assessing the reasonableness of attorney's fees.

This is problematic because a cursory review of available literature reveals that the English method and the American method use markedly distinct procedures. As explained below, the requirements under English law do not guarantee recovery of attorney's fees and based on the type of case and a party's compliance with specific procedures, a Court could limit fees to a set amount if it chooses to award them at all.

12

Under the American Rule, courts can use multiple different approaches. For example, in the class action context, attorneys can be awarded fees based on a percentage of the recovery. *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). To contrast, under 42 U.S.C. § 1988's fee shifting provision, the courts apply the lodestar method, which "produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551, 130 S. Ct. 1662, 1672, 176 L. Ed. 2d 494 (2010).

Determining the reasonableness of an attorney's fee request is a job left to the Court. In the Eleventh Circuit:

> The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.

*Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

The district court is also given wide latitude in reducing fees; when appropriate, it can reduce fees on either an hour-by-hour basis or, alternatively, it can apply an across-the-board percentage cut. *See Bivens v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (explaining that, where the number of hours claimed by a fee applicant is unreasonably high, the district court may either conduct an hour-by-hour analysis or it may reduce the hours using an across-the-board cut; regardless, the court must concisely and clearly explain any reductions to allow for meaningful appellate review);

13

*Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (although an hour-by-hour analysis of hours expended is preferable, where fee documentation is so voluminous that an hour-by-hour review would be impracticable, an across-the-board percentage reduction may be appropriate).

In contrast, the English Rule requires a different approach. To begin, attorney's fees under English law are assessed by the judges from the Senior Courts Costs Office (colloquially referred as "taxing Masters"), an entity distinct from the courts which adjudicate merits issues. The Senior Courts Costs Office Guide, 2021, available at https://www.judiciary.uk/wp-content/uploads/2021/01/Senior-Courts-Costs-Guide-2021-final-version-with-cover-FINAL-AMENDS-21-JAN.pdf ("SCCO Guide"); *see also Alyeska Pipeline Serv. Co.*, 421 U.S. at 247 ("It is now customary in England, after litigation of substantive claims had terminated, to conduct separate hearings before special 'taxing Masters' in order to determine the appropriateness and the size of an award of counsel fees."). Importantly, "[i]n litigation, no party has a right to costs. Costs are in the discretion of the court." SCCO Guide 2.2.

The English law also proscribes different procedural requirements by which litigants must abide. For example, litigants are required to create a Costs Management budget at the outset of the litigation so that the Court may make a Costs Management Order, which "will record the extent to which budgets are agreed between the parties and, in respect of budgets which are not agreed, record the Court's approval after

14

making appropriate revisions . . . [and] the Court will thereafter control the parties' budgets in respect of recoverable costs." SCCO Guide. 3.1. Parties seeking fees must also comply with the indemnity principle:

> Where a party puts a statement of costs before the court for summary assessment that statement must be signed by the party or a legal representative. The form states: "The costs stated above do not exceed the costs which the [party] is liable to pay in respect of the work which this statement covers."

SCCO Guide 2.6(ii).

There are also substantive differences under the English law. As an illustration, when a party receives a judgment greater than a defendant's offer of settlement, the Court is permitted to award the claimant an additional amount not to exceed £75,000, calculated on a percentage basis of the award. SSCO 36.2. As an additional limitation, the Court treats those who failed to file the aforementioned Costs Management budget as "having filed a budget comprising only the applicable court fees. SCCO 3.1; *cf. Alyeska Pipeline Serv. Co.*, 421 U.S. at 247 (recognizing that under English law "[f]ees which may be included in an award are usually prescribed, even including the amounts that may be recovered for letters drafted on behalf of a client.").

Despite claiming that it is entitled to attorney's fees under English law, Plaintiff has failed to provide any information indicating whether it has complied with English law and whether its fee request would be accepted under English law. Thus, even if English law were to apply (which it does not), the Undersigned is wholly incapable of

properly assessing the appropriateness of the fee award under those standards. This failure serves as an alternative basis to deny Plaintiff's request.

It is not the role of the court to research issues on behalf of a litigant; it is the responsibility of the litigant to provide the court with sufficient information so that it may make an informed and correct ruling. "A party's failure to cite legal authority in support of its position 'suggests either that there is no authority to sustain its position or that it expects the court to do its research.'" *Goldberg for Jay Peak, Inc. v. Raymond James Fin., Inc.*, No. 16-21831-CIV, 2017 WL 7791564, at *7 (S.D. Fla. Mar. 27, 2017) (quoting *Rapid Transit Lines, Inc. v. Wichita Developers, Inc.*, 435 F.2d 850, 852 (10th Cir. 1970)).

The Court declines this invitation and rejects Plaintiff's argument based on its failure to provide any authority establishing the fees that would be awarded under English law. *See United States v. Heijnen*, 215 F. App'x 725, 726 (10th Cir. 2007) (rejecting the appellant's arguments for failure to provide supporting legal authority); *Anderton v. Avery Fin. Servs.*, No. 4:10–cv–00392–EJL–CWD, 2011 WL 4584979, at *6 (D. Idaho Aug. 23, 2011) (same); *Crews v. Sara Lee Corp.*, No. 08–CV–113–LRR, 2009 WL 909236, at *1 (N.D. Iowa Mar. 31, 2009) (same).

Because the Undersigned has determined that Plaintiff has not met its burden to establish that it is entitled to attorney's fees, I decline to address the reasonableness of counsel's hourly rates or hours spent litigating the case.

For these reasons, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's request for attorney's fees because English law does not apply under the contract and because, even if it did apply, Plaintiff has failed to establish that it is entitled to fees under English law.

### IV. Conclusion

Because Plaintiff is the prevailing party via default, the Undersigned **respectfully recommends** the District Court **grant in large part** its Motion to Tax Costs and award it **$467.00** in costs ($5.40 less than the requested amount). Furthermore, because Plaintiff has failed to establish an applicable exception to the well-established American rule that litigants bear their own attorney's fees, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's Motion for Attorney's Fees.

### V. Objections

The parties will have fourteen days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the United States District Judge. Each party may file a response to the other party's objection within fourteen days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140,

149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on May 2, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola
All Counsel of Record